McIlvaine, O. J.
It is objected, in the first place, that the indictment, in order to support the verdict, is not sufficiently certain in charging the intent or purpose to Mil.
It is unquestionably true, under our statute, that an intent or purpose to Mil must be present in the mind of the slayer at the time and place of the assault, and that the assault must be made in execution of that purpose, in order to constitute the crime of murder in either the first or second degree. But it is not essential that the person assaulted should then and there die, or that the slayer intended that the death should take place then and there. If the assault be made for the purpose of killing thereby, it matters not that the slayer hoped and intended that the person assaulted would languish, and languishing would live, even so that the intended death might occur on a future day and at another place.
Now the exact question made in this case is, does the-indictment show with sufficient certainty that the accused made the assault and inflicted the mortal wounds upon. Schilling, at the time and place named, with intent then and there, and thereby, to kill and murder him ?
In charging the intent to kill, it is true the usual predicate “ then and there” was omitted. But is such omission, fatal ?
While an indictment should not be construed favorably for the state, still the rule of pleading does not require-the greatest certainty of averment in every particular of which the language is capable. It is sufficient that the-facts constituting the crime be stated with certainty to a. certain intent in general.
This indictment charges the accused with assaulting and' wounding Schilling at a certain time and place, with intent *469 him purposely and of deliberate and premeditated malice to kill and murder. This form of averment, not only reasonably, but clearly shows that the murderous intent was present in the mind of the accused at the time and place of the assault, and also that the assault itself was made with intent thereby to kill and murder Schilling.
2. On the trial of Rufer, the state called as a witness in chief, one John Paulis, a captain of police, who had first arrested the accused for the crime charged in the indictment, and undertook to prove by him a conversation between the witness and accused while in his custody, in which the accused made certain declarations, which tended to show himself guilty of the crime charged. To the introduction of this testimony, the accused, by his counsel, objected, until the state had first shown, by a preliminary examination, that the alleged confession was given voluntarily ; whereupon the court directed the prosecuting attorney to inquire of the witness, whether any promise or threat had been made to the accused, to induce the confession. The witness was interrogated as directed, but did not disclose any improper inducements. Thereupon the prosecuting attorney insisted upon the introduction of the testimony. “ To which the defendant objected that the preliminary examination was insufficient, and insisted upon the right, by his counsel, to inquire of the witness respecting inducements held out to him to make confessions of his .alleged guilt, or other inculpatory statements, before the relation of said answer in evidence. But the court denied the right (as claimed) of the defendant, by his counsel, to interrogate the witness on the subject of any inducement which had been held out to him, until the entire examination of said witness in chief, by the prosecuting attorney, had been concluded, and thereupon refused the defendant and his counsel leave, at that time, to inquire of the witness respecting such inducement aforesaid; and also decided that the prosecuting attorney had, by his examination, shown a sufficient case, prima facie, for the admission in evidence of the alleged answer,” etc. Thereupon, the wit *470 ness testified to the conversation, which tended to show the defendant’s guilt.
In the above rulings, we think the court below mistook, the proper practice in such cases.
Whilst voluntary confessions are always admissible-against a prisoner on trial, it is well settled that confessions of guilt made through the influence of hopes or fears,, induced by promises or threats of temporal benefit or disadvantage, are wholly inadmissible. There is no presumption of law, however, that such confessions are induced by improper representations made to the jnisoner, but, on the contrary, like every other act of the human hand or head, they are presumed to be voluntary until the contrary is-shown. Hence the burden of showing that such confessions were involuntary, rests upon the accused. But to the-end that he may not be prejudiced by the introduction of inadmissible confessions, it is the right of the defendant to> show by preliminary proof, at least to the extent that such preliminary proof can be made by the witness offei’ed to prove the confession, that it was not voluntarily made; and it is the duty of the judge in such case to hear and determine the question of its admissibility, not upon such showing as the prosecutor may deem proper to make upon a preliminary examination-in-chief of the witness, but upon the* proof which' the accused may offer on his own examination of the witness. We do not mean to say that the question,, whether or not the confession was made voluntarily, can in no event be left to the jury; but we do hold the rule to-be that the question, where objection is made to the admissibility of the confession, must, in the first instance, be¡ adjudged by the court, and that the right of the accused to inquire of the witness and prove that the confession was-induced by improper threats or promises, can not be postponed until after the confession is introduced, and the entire-examination of the witness in chief has been concluded.
It does not follow, however, that the judgment must be-reversed on account of these erroneous rulings of the court below. Indeed, it should not be reversed unless the defend *471 ant was prejudiced by them, and it is difficult to see how,, upon this record, he could have been prejudiced. The record discloses no fact, either proved or offered to be proved,, which, in law, would have rendered the confession inadmissible. No question was put or offered to be put to the witT ness; no fact was stated, which it was either known or believed the witness would prove, and no other witness was offered on the matter. True, the record shows that the defendant insisted upon his right to examine the witness on the preliminary question before the confession could be-given, which the court denied, and decided that his right to examine the witness did not accrue to him until after the-entire examination-in-chief had been concluded. In this we think the defendant was right,- and the court was wrong; but it was a mere abstract question. It is also true that the record shows that the court refused the defendant leave,, at that time, to inquire of the witness, etc., but it does not show that the defendant, in terms, asked for such leave. Now, it may be that the defendant was deterred from putting questions to the witness and making proof of material facts, by reason of the opinions thus expressed by the court. But we are not at liberty to say that such was the fact. It is for error prejudicial to the defendant, which the record affirmatively shows, that the judgment can be reversed, and for no other.
3. The record also shows, that on' the trial of Rufer,. before any testimony had been offered tending to show a conspiracy to murder Schilling between the defendant on trial and those jointly indicted with him, the state called as awitness one Henry Ereiberg, who, against the objections of the defendant, gave testimony tending to prove that Andreas and Ered Egner had made a violent assault upon Schilling, some six weeks previous to the alleged assault which resulted in his death, and also gave other testimony tending to show that Andreas Egner, on the same day, but after the assault first above named, in a conversation with witness in relation to that transaction, made certain threats that he would kill Schilling if he caught him under the *472 four eyes. To all which, the defendant excepted. And the bill of exceptions taken on the trial of Andreas Egner, on the same indictment (which took place after the trial of Rufer), shows that the state, to maintain the issue against him, called as a witness one George B. Knappe, who testified, against the objection of the defendant, that Rufer on ■his trial had offered himself as a witness in his own behalf^ ■and as such witness in his own behalf, in the presence of the court and the witness (Knappe), but in the absence of the defendant Egner, testified in substance, that on Saturday, the 7th November, 1874, the date of the alleged murder, he had been discharged from labor by his employer ; that after his discharge he went to the saloon of Andreas Egner, and then and there learned from Egner that Schilling had caused his discharge; that he told Pgner of his discharge, and that Egner thereupon said, “ that low, dirty Dutch son of a bitch (meaning Schilling). was mean enough to get anybody out of employment to get his own friend in,” and that upon this information he believed that Schilling had been the cause of his discharge.
The court overruled the objection of the defendant to the introduction of this testimony, upon the ground, as the record shows, that although it was not testimony against Egner, it was competent testimony to show the state of Rufer’s mind toward Schilling. To all which the defendant •excepted.
Upon this state of the record several questions are raised:
1. Where two or more persons are jointly indicted for ■murder, is it competent for the state, upon the separate trial •of one to show malice or ill-feeling against the decased on the part of those not on trial ?
2. If such testimony be competent in any state of the case, can it in any event tend to show, as between those jointly indicted, a conspiracy to commit the crime? . •
8 Can such ill-feeling toward the deceased, on the part of those not on trial, be shown by their admissions or declarations made in the absence of the defendant on trial ?
As abstract propositions I would answer these questions *473 .as follows: To the first, I would say, it may he done in a ■proper ease. The second should he answered in the negative. And the third should be answered also in the negative, unless the declaration be made after a conspiracy formed and in furtherance of its design.
But in order to more fully understand the principles involved and to give them practical application, the theory of this murder, as claimed by the state, should be stated, which, as gathered from the records, is as follows:
Eor some months previous to the alleged murder of Schilling, Andreas and Ered Egner, father and son, were bitterly incensed toward Schilling for a real or fancied wrong of a very grave character, and had formed the design to take his life. On the 7th of November, 1874, Rufer was discharged from an employment where he had been engaged for the year previous. After his discharge, Andreas Egner informed him that his discharge had been effected through the influence of Schilling, a co-laborer in the same employment. Thus becoming incensed toward Shilling, Rufer entered into conspiracy with the Egners (being also induced thereto by promises of reward) to take the life of Schilling, and that the common design was executed during the night of that day, by the concerted action of the conspirators — all being present, aiding and assisting in the execution, — Andreas Egner inflicting the fatal blows.
Now, upon this theory of the case, it became a material question, between the state and Rufer, whether or not the act of Egner was influenced by malice and a purpose to •kill. If the assault made by Egner upon Schilling was not murderous, then Rufer, who was present encouraging the act, was not guilty of murder, although Schilling died from •the effects of the' assault. In this view of the case, proof of the existence of ill-feeling on the part of Egner toward Schilling was competent as against Rufer, for the purpose •of showing the motive and intent of the assault. The •competency of this testimony, however, rests on the assumption that Egner and Rufer were acting in concert and in furtherance of a common design. But the fact whether *474 or not they were so acting depended wholly upon other-proof. As against Ruler, the fact that Egner bore ill-will toward Schilling is not competent as even tending to prove-a conspiracy between them to inflict an injury upon the object of Egner’s hate. Nor would it make any difference if it were shown that Rufer, from a different cause, also entertained ill-feeling toward the deceased. Feelings of revenge in different persons against another, but originating in different causes, do not raise an inference, either as matter of law or as matter of fact, that such persons will conspire and make common cause of their revenge.
Rut was it competent for the state, on the separate trial' of either of these defendants, to prove by the declarations of the other a feeling of ill-will on the part of the declarant against the deceased, when such declarations were not. made in the prosecution of the common enterprise ?
The law upon this subject has already received the careful consideration of this court. In Patton v. The State, 6 Ohio St. 467, it was held: “ The acts and declarations of a conspirator may, after sufficient proof of conspiracy, be given in evidence to charge his fellow-conspirator, but subject always to the limitation that the acts and declarations admitted be those only which were made ■ and done during the pendency of the criminal enterprise, and in furtherance of the common object.” And in Fouts v. The State, 7 Ohio. St. 471, it was said: “Where two or more persons are proved to have been associated together for an illegal purpose, an act or declaration of one of the parties in furtherance of the common object, and while engaged in the prosecution of the general design, may be given in evidence against his associates; but the declai’ations of a party made-in his own behalf, and detailing what he, personally, intends to do, but not in furtherance of any concerted action with others, are not admissible as evidence against an associate in crime, although he and such associate may afterward engage in and be indicted for the same criminal act to which the declarations and admissions related, and although it may also be proved that, before the making of the declara *475 tions, the two had jointly arranged to commit the identical-: act.”
It was also held in Patton’s case (supra,): “ Where declarations are merely narrative of a past occurrence, they can not he received as evidence of such occurrence. They must be concomitant with the principal act, and connected with-it so as to constitute a part of the res gestes.”
Tested by these principles, there was error in the conviction of each of these plaintiffs in error. In Rufer’s case,, assuming that he had conspired with the Egners to take the life of Schilling before the day upon which Andreas Egner made the threats, as testified to by Ereiberg, or if he-came into the conspiracy after that date, and thereby became chargeable with all that had previously transpired in promoting the conspiracy as formed between Andreas and. Ered Egner, it is quite certain that the declaration of Andreas Egner, as testified by Ereiberg, was not made by him in furtherance of the common design, or while he was engaged in prosecuting it, but was wholly disconnected from ■any transaction, and was a mere affirmation of what he, personally, intended to do, and ought not therefore to have been admitted against Rufer. Nor can the consequence of this error be averted on the ground that these declarations were-admitted solely for the purpose of showing Egner’s motive-in assaulting the deceased. As we have shown above, the-defendant Rufer was directly interested in the determination of that issue, and as against him the declaration offered, was mere hearsay.
Eor error in admitting these declarations in evidence, the-judgment against George Rufer must be reversed.
Erom what has already been said, it is apparent that the-court below also erred, on the trial of Andreas Egner, in admitting the testimony of the witness Knappe, as to the declarations made by Rufer. These declarations should have been excluded upon the same principle — to wit, that they were not made pending the conspiracy, or in furtherance of its object, as is clearly shown by the fact that they *476 ■were made long after the death of Schilling, and professed to he simply a narrative of past occurrences.
Eor error in admitting this testimony, the judgment •against Andreas Egner must also he reversed.
4. There is one other matter that deserves to be mentioned.
On the trial of Andreas Egner, testimony was offered on behalf of the state tending to show that the defendant on trial, and Ered Egner, who was jointly indicted with him, ■on the 6th day of August preceding the alleged murder, ;had committed a violent assault and battery upon Schilling. Afterward, the defendant, in introducing testimony in his own behalf, offered to prove the nature of the circumstances which led to the assault on the 6th of August, ;and upon objection being made, the court refused to admit the evidence.
The nature of the testimony thus refused to be admitted is disclosed in the record; and while we do not see how .the defendant could have been prejudiced thereby, as the ■proposed testimony might well show malice on his part toward Schilling, and strong motives for revenge, and would not even tend to show a justification of the act, or a cause ■for mere temporary passion, still we can not perceive the grounds on which it was rejected.
Where an act or transaction is offered in evidence for the purpose of showing the motives or the state of mind of the •.parties to it, at least as a general rule, the party affected ought to be permitted to show the circumstances which led to it, otherwise the real object of the inquiry may not with certainty be ascertained.
There are several other matters assigned for error in these cases, but we think the assignments are not well made, and that it is not necessary to report the opinion of •.the court in relation to them.

Judgments reversed, and cause remanded for new trials.

Welch, White, Rex, and Gilmore, JJ., concurred.